# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**AKEEM MUHAMMAD,**
**D.O.C. # 706732,**

    **Plaintiff,**

vs.                                      **Case No. 4:22cv467-MW-MAF**

**RICKY DIXON, Secretary**
**Florida Department of Corrections,**
**and B. TURNER,**

    **Defendants.**
**_____/**

## REPORT AND RECOMMENDATION

    Plaintiff, a prisoner in the custody of the Florida Department of Corrections, initiated this case by filing a pro se civil rights complaint under 42 U.S.C. § 1983. ECF No. 1. Plaintiff paid the filing fee, ECF No. 6, and service of process was directed. ECF No. 7.

    Initially, an unexecuted service return was filed for Defendant Turner, ECF No. 17, indicating the Defendant was on administrative leave. Service was redirected, ECF Nos. 18 and 20, and an executed summons was filed on April 24, 2023. ECF No. 23. The United States Marshals Service

served the Defendant pursuant to Federal Rule of Civil Procedure 4(e) on April 19, 2023. *Id.* A statement for the costs of service was not included and, thus, it does not appear that the Defendant should be required to pay those costs. Defendant Turner has filed an answer to Plaintiff's complaint. ECF No. 26. A scheduling order will be separately entered.

In late March 2023, Defendant Dixon filed a motion to dismiss. ECF No. 16. Plaintiff was informed of his obligation to respond to that motion. ECF No. 20. Plaintiff has filed a response in opposition to the motion. ECF No. 25. The motion is ready for a ruling.

**Allegations of Plaintiff's Complaint, ECF No. 1**

Plaintiff has been incarcerated in the Florida Department of Corrections since 1997 and is serving a life sentence. ECF No. 1 at 3. Between February and June of 2019, Plaintiff was housed in the "L-Dorm" at Zephyrhills Correctional Institution. *Id.* Defendant Turner was assigned to L-Dorm and held the rank of Sergeant. *Id.* On May 9, 2019, Defendant Turner came to Plaintiff's cell and told him that Doctor Boyce did not like the grievance Plaintiff had filed the day before. *Id.* at 5. Defendant Turner told Plaintiff he was "going to pay for it," and led Plaintiff out of his cell. *Id.* Once outside of the cell, Defendant "Turner maliciously and sadistically,

without need or provocation, violently grabbed Plaintiff . . . and violently slammed Plaintiff into the concrete floor on Plaintiff's right shoulder." ECF No. 1 at 5. Plaintiff alleged that Defendant Turner held him down for approximately five minutes, preventing him from breathing in a manner "similar to the force that was used on George Floyd for eight minutes in 2020 . . . ." *Id.* Defendant Turner told Plaintiff that it was "only the beginning." *Id.* at 6.

Plaintiff filed a grievance "regarding Turner's unnecessary and excessive force on 5-9-19." *Id.* Plaintiff said the grievance was approved on 5-17-29. *Id.*

Plaintiff also alleges that since 2011, "correctional officers statewide have had a culture of violence and physical abuse against inmates." ECF No. 1 at 4. He contends the Secretary is personally aware of that culture and the "widespread use of unnecessary and excessive force on inmates by correctional officers statewide." *Id.* Plaintiff says the Secretary "has intentionally failed and refused to adopt and implement reasonable policies, training, and action to eliminate the culture of violence and physical abuse against inmates by correctional officers statewide." *Id.* As this case pertains to the Secretary, Plaintiff asserts an Eighth Amendment violation

against him and he seeks a declaratory judgment and permanent injunction.  *Id.* at 7.

**Motion to Dismiss, ECF No. 16**

Defendant Ricky D. Dixon, Secretary of the Florida Department of Corrections, has filed a motion to dismiss raising six defenses.  ECF No. 16.  The Secretary argues that Plaintiff failed to exhaust administrative remedies, he claims entitlement to Eleventh Amendment immunity, and argues that he "is not liable under the theory of respondeat superior."  *Id.*  Further, the Secretary contends that Plaintiff fails to state a claim, and is not entitled to either declaratory or injunctive relief.  *Id.*

**Standard of Review for the Exhaustion Defense**

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement."  <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008)).  Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  <u>Bryant</u>, 530 F.3d at 1374 (cited in <u>Turner</u>, 541 F.3d at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner, 541 F.3d at 1082 (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing to Bryant, 530 F.3d at 1373-74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[1] The burden of proof for evaluating an exhaustion defense rests with the defendant. Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required

---

[1] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

**Analysis**

In enacting the Prison Litigation Reform Act (PLRA), Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998), and "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Further, an inmate must exhaust administrative remedies "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, 149 L. Ed. 2d 958 (2001).

A prisoner must comply with the process set forth and established by the grievance procedures, Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999), and he must do so "properly." Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially

imposed requirements).  "Proper exhaustion" is determined by looking to the requirements of the "prison grievance system."  Woodford, 548 U.S. at 95, 126 S. Ct. at 2388 (stating "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.").  Thus, a prisoner must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922, 166 L. Ed. 2d 798 (2007).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  Jones, 549 U.S. at 218, 127 S. Ct. at 922-23.

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones, 549 U.S. at 204-209, 127 S. Ct. at 914.  The Supreme Court has noted that by requiring exhaustion, corrective action may be taken which obviates the need for litigation, some frivolous claims may be filtered out, and for those claims "ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy."  Porter, 534 U.S. at 525, 122 S. Ct. at 988 (citations omitted).

In Florida, inmates are provided an Inmate Orientation Handbook which guides them in the "rules, procedures, requirements and routines" of prison life. Jean-Denis v. Inch, No. 3:19cv575-RV-MAF, 2020 WL 3001933, at *3 (N.D. Fla. May 11, 2020), report and recommendation adopted, No. 3:19cv575-RV-MAF, 2020 WL 3001392 (N.D. Fla. June 4, 2020). The handbook directs inmates to the Department's "grievance process" and Rule 33-103, Florida Administrative Code. Jean-Denis, 2020 WL 3001933, at *3. Pursuant to those rules and procedures, inmates may file grievances regarding "[t]he substance, interpretation, and application of rules and procedures of the department," the "interpretation and application of state and federal laws and regulations," reprisals, incidents that affect them personally, and "conditions of care or supervision within the authority of the Florida Department of Corrections . . . ." FLA. ADMIN. CODE R. 33-103.001(4)(a)-(e). "The purpose of the grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance." FLA. ADMIN. CODE R. 33-103.001(1). The process also assists "the department by providing additional means for internal resolution of problems and improving lines of communication." Id.

The Department's rules require complying with a three-step grievance process. FLA. ADMIN. CODE R. 33-103. See <u>Torres v. Fla. Dep't of Corr.</u>, No. 4:15cv464-RH/CAS, 2017 WL 9439165, at *4 (N.D. Fla. Aug. 16, 2017), report and recommendation adopted, No. 4:15cv464-RH/CAS, 2017 WL 4031462 (N.D. Fla. Sept. 11, 2017), *aff'd*, 742 F. App'x 403 (11th Cir. 2018). The three-step process involves filing an informal grievance, then a formal grievance, and finally, an appeal to the Secretary's Office. ECF No. 16 at 10. After completing that three-step grievance process, an inmate can initiate a lawsuit. FLA. ADMIN. CODE R. 33-103.

Here, the Secretary argues that Plaintiff did not file a grievance concerning the claims raised against him. ECF No. 16 at 3. The Secretary acknowledges that Plaintiff <u>did</u> file a grievance concerning the excessive force allegedly used by Defendant Turner. *Id.* The grievance was approved. *Id.* However, the Secretary states that Plaintiff did <u>not</u> file either an informal or formal grievance during the relevant time period in 2019 concerning the claims he brings against the Secretary. ECF No. 16 at 12-13. "Plaintiff's one approved informal grievance regarding his claims in this case only refers" to the alleged actions of Defendant Turner. *Id.* at 13.

The Secretary provided several exhibits in support of that argument. ECF No. 16-1.  Included within the exhibits is a copy of Plaintiff's claim of staff abuse by Defendant Turner.  ECF No. 16-1 at 9-10.  "There is no mention of a 'statewide . . . culture of violence'" or a grievance that challenges the Secretary's failure to take any action concerning the unnecessary and excessive uses of force by correctional officers.  ECF No. 16 at 13.  Thus, the Secretary argues that Plaintiff's claim against him should be dismissed for failure to exhaust administrative remedies.  *Id.*

In response, Plaintiff does not dispute that he did not file a grievance against the Secretary after May 9, 2019, when Defendant Turner used force against him.  ECF No. 25 at 6-7.  Plaintiff notes that his claim against the Secretary is for an "ongoing failure since 2011 . . . ."  *Id.* at 8.  Plaintiff suggests that he filed grievances at some point in the past which alerted the "Secretary and prison officials to the problem and giving them the opportunity to resolve it before being sued."  *Id.* at 9-10.  He contends that he was "not required to initiate another round of the administrative grievance process on the exact same issue each time another correctional officer used unnecessary and excessive force on Plaintiff or some other inmate."  *Id.* at 10.

The deficiency with Plaintiff's response is that he has not identified a prior grievance which was properly filed and brought this issue to the Secretary's attention. Plaintiff has made only a vague assertion of a pre-May 2019 grievance which raised the issue, but Plaintiff has not clarified the claim which he previously presented to the Department. Plaintiff did not submit any grievances with his response to show that he had previously exhausted administrative remedies concerning his claim that the Secretary has taken no action to prevent a culture of inmate abuse with excessive force. It is unknown if any prior grievance was approved, denied, or returned without action.

Because Plaintiff has not disputed the Secretary's contention that he did not file a grievance concerning the claims raised against the Secretary in 2019, the motion to dismiss should be granted. This case should be limited to the claim which was exhausted against Defendant Turner.

In light of this recommendation, the remaining arguments presented by Defendant Dixon have not been addressed.

### RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendant Ricky Dixon, ECF No. 16, be **GRANTED** and Plaintiff's claim

Case No. 4:22cv467-WS-MAF

against him be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e). It is further **RECOMMENDED** that the case be **REMANDED** for further proceedings concerning Plaintiff's claim against Defendant Turner.

**IN CHAMBERS** at Tallahassee, Florida, on May 30, 2023.

 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**