# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**AKEEM MUHAMMAD,**
**D.O.C. # 706732,**

     **Plaintiff,**

**vs.**                    **Case No. 4:22cv467-MW-MAF**

**BOYCE TURNER,**

     **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner in the custody of the Florida Department of Corrections, initiated this case in December 2022, by filing a pro se civil rights complaint under 42 U.S.C. § 1983 against two Defendants: Correctional Sergeant Boyce Turner and Florida Department of Corrections Secretary Ricky Dixon.  ECF No. 1.  Plaintiff paid the filing fee in January 2023, ECF No. 6, and Defendants were served with process.  After the denial of Defendant Dixon's motion to dismiss, ECF No. 16, *see* ECF No. 30, Plaintiff submitted an amended civil rights complaint, ECF No. 37, in July 2023 which he omitted Defendant Dixon as a Defendant.

Subsequently, Plaintiff requested permission to file a second amended complaint. ECF No. 48. Defendant did not oppose Plaintiff's motion, ECF No. 51, and Plaintiff's motion to amend was granted. ECF No. 52. This case proceeds on Plaintiff's second amended complaint, ECF No. 49, against Defendant Turner, sued in his individual capacity only. *Id.* at 1.

The parties were provided an opportunity to conduct discovery, and the discovery period ended on September 28, 2023. ECF No. 28. Defendant filed a motion for summary judgment, ECF No. 61, supported by seven exhibits. Although Plaintiff initially moved to strike Defendant's Exhibit G, ECF No. 66, he ultimately changed his position and consented to consideration of Exhibit G when ruling on the summary judgment motion. ECF No. 74. Plaintiff was granted two extensions of time in which to file his opposition to the Defendant's summary judgment motion, and he filed his response in mid-February 2024. ECF No. 84. Defendant Turner filed a timely reply on March 15, 2024. ECF No. 88.

Plaintiff then filed a motion to strike the reply. ECF No. 89. Plaintiff argued that his "opposition did not raise any new matter not addressed in Defendant's motion," and he requested the reply be stricken. *Id.* Defendant Turner filed a response to the motion to strike and said that "Plaintiff [was]

mostly incorrect." ECF No. 90 at 2. While acknowledging some "overlap" with the motion for summary judgment, Defendant states that the reply also addressed "new arguments and assertions Plaintiff raised in his Response." *Id.*

Local Rule 56.1 permits a "moving party" to file a reply memorandum "only if the opposing memorandum raised new matters not addressed in the original supporting memorandum." N.D. Fla. Loc. R. 56.1(D). In this case, because Plaintiff raised new arguments concerning offers versus orders, Defendant's reply is permissible. Thus, Plaintiff's motion to strike, ECF No. 89, should be denied.

In general, Plaintiff's complaint alleges that the Defendant used unnecessary and excessive force against him in violation of the Eighth Amendment. ECF No. 49. All events occurred on May 9, 2019, while Plaintiff was incarcerated at Zephyrhills Correctional Institution (ZCI). *Id.* at 2. Plaintiff contends he has suffered both physical and emotional injuries. *Id.* at 7-8.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  As

noted above, the parties were provided adequate time to conduct

discovery.

The "party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material

fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving

party must then show[1] though affidavits or other Rule 56 evidence "that

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of

there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256, 1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence

evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Case No. 4:22cv467-WS-MAF

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

This case also involves the submission of video evidence.  Where a "video obviously contradicts Plaintiff's version of the facts," the Court must "accept the video's depiction instead of Plaintiff's account."  Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing to Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also* Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018).  Because Plaintiff is the nonmoving party, his version of events must be credited "where no obviously contradictory video evidence is available."  Pourmoghani-Esfahani, 625 F.3d at 1315.

"Summary judgment is not a time for fact-finding; that task is reserved for trial."  Sconiers, 946 F.3d at 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)).

"[A]t the summary judgment stage the judge's function is not himself to

weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249, 106

S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir.

2019)).

**The Relevant Rule 56(e) Evidence**

Plaintiff has been incarcerated in the Florida Department of

Corrections since January 28, 1997.  ECF No. 84-2 at 2 (Plaintiff's Ex. A).

He is "very familiar with the ways, customs and mannerism of correctional

officers" and other staff with the FDC.  *Id.*  Plaintiff is 5'5" and weighs

approximately 135 pounds.  *Id.*  Defendant Turner is 5'10" and weighed

approximately 245 pounds in May 2019.  ECF No. 84-3 at 4.

Plaintiff presented an affidavit in which he states that officers in the

DOC "give inmates options on a daily basis that inmates can choose to act

on or not act on."  ECF No. 84-2 at 3.  For instance, "officers customarily

say 'have a seat' to give inmates the option to sit on a chair, stool or bench

in their presence.  *Id.*  Plaintiff says that "officers customarily say 'sit' or 'sit

down' to order inmates to sit on the chair, stool or bench in their presence.

*Id.*  Plaintiff says that inmates generally understand whether such a

"statement is an order or option." *Id.* at 3-4.  However, Plaintiff says that during situations in which the inmate misunderstood that an order was not an option, "officers customarily do and/or say things to the inmates to clearly inform them that their statement was an order." *Id.* at 4.  "For example, officers raise their voice, take an aggressive stance, use an aggressive tone, and/or say 'that's an order,' 'I'm giving you a direct order,' or 'are you refusing a direct order.'" *Id.*

Plaintiff is housed in solitary confinement and says that he is always required to be handcuffed before the door to his cell is opened.  ECF No. 84-2 at 4.  In May 2019, Plaintiff was housed "in a single-man cell 24 hours a day in an inpatient mental health treatment unit . . . ." *Id.* at 4-5.  Since November 2012, Plaintiff has had only one disciplinary report written against him for disobeying an order, and that was written by Defendant Turner.  *Id.* at 4.

Plaintiff wrote a grievance on May 8, 2019, complaining that the psychologist, S. Boyce, was "allowing officers to mistreat inpatient inmates housed in L-Dorm" at ZCI.  ECF No. 84-2 at 6.  The next day when Ms. Boyce was conducting her morning rounds, she said to Plaintiff, "I received your grievance yesterday. *Id.*  Plaintiff said that her "tone, facial

expression and mood" conveyed to him that she "was displeased" with his grievance.  *Id.*

At approximately 4:45 p.m. that same day, Defendant Turner came to Plaintiff's cell with officers Jones, Pittman, Dale, and Brown.  ECF No. 84-2 at 6.  Plaintiff said they opened his cell without first handcuffing him which Plaintiff said frightened him.  *Id.*  A discussion ensued about the DOC's "handcuffing and cell extraction policies," until one of the officers ordered Plaintiff to "turn around and submit to handcuffs."  *Id.*  Plaintiff says he complied.[2]  *Id.*

Plaintiff also said that he was gripped by Defendant Turner who said, "Doctor Boyce doesn't like that grievance you wrote yesterday, and you're going to pay for it."  *Id.*  Defendant Turner held onto Plaintiff's arm and walked him approximately 20-25 feet away from his cell to a table and stool.  *Id.* at 7.  Defendant Turner released his grip and said to Plaintiff, "have a seat."  *Id.*  Plaintiff said that he understood Defendant Turner's words to be giving him an option, and Plaintiff said he "declined" the offer

---

[2] Although not a material fact, Defendant Turner said in his declaration that when Plaintiff was ordered to exit his cell, he "refused."  ECF No. 61-6 at 1.  Plaintiff was given a "direct order to exit his cell which he again refused."  *Id.*  Another officer entered Plaintiff's cell and ordered Plaintiff to submit to restraints at which time he complied.  *Id.*

and said that he "preferred to remain standing."  ECF No. 84-2 at 7; *see also* ECF No. 61-4 at 2.  Plaintiff said that Defendant Turner never told Plaintiff it was an order and never said anything else.  ECF No. 84-2 at 7.  Plaintiff also said that Defendant Turner "released his grip" on Plaintiff's arm and "ceased physically touching" Plaintiff "in any way."  *Id.*  Instead, "without any warning," Defendant Turner "violently grabbed" Plaintiff's left arm, pushed him, and then swept Plaintiff's feet off the floor, slamming him to the concrete floor on his right shoulder.  *Id.* at 8.  Plaintiff contends that the push was done "to indicate to the fixed-wing camera that [Plaintiff] attempted to pull away from" the Defendant's grip.  *Id.*  Plaintiff says the action was malicious, "without need or provocation," and caused his "eye glasses to fly off [his] face."  *Id.*

Plaintiff further emphasizes that he did not refuse to comply, did not pull away, and that Defendant Turner never said anything to him after initially saying "have a seat."  *Id.*[3]  Plaintiff maintains that he did not tell Defendant Turner, "I'm not sitting down," and Defendant never ordered

---

[3] In Plaintiff's deposition, he testified that he was talking and could not "say if he said anything else after" telling Plaintiff to "have a seat."  ECF No. 61-4 at 2-3.  Plaintiff clarified his testimony this way - if if the Defendant told him a second time to have a seat, Plaintiff said: "I didn't hear him.  That's my testimony."  *Id.* at 3.

Plaintiff "to sit down." *Id.* at 7, 8.  In his affidavit Plaintiff states that he "did

not physically or verbally resist Turner or any other officer." *Id.* at 10.

Defendant submitted a portion of Plaintiff's deposition in which

Plaintiff testified that he "understood" Defendant's statement "to be an offer,

and I declined his offer."  ECF No. 61-4 at 2.  Plaintiff even clarified that he

did not hear Defendant Turner tell him a second time to have a seat.  *Id.* at

2-3.  Plaintiff said: "That's my testimony, sir, that he offered me the initial

'have a seat,' I told him, 'no, I'm going to stand up.'" *Id.* at 3.

Immediately after Defendant Turner "slammed" Plaintiff to the ground,

Plaintiff said that he was held "in a face-down prone position on the cement

floor with the right side of [Plaintiff's] face and head pressed into the floor."

ECF No. 84-2 at 8.  Plaintiff said that "substantial pressure and weight" was

applied to the left side of his body and he "could not move or breath[e]."  *Id.*

Defendant Turner pushed his thumb into Plaintiff's neck and continued

applying pressure.  *Id.* at 9.  Plaintiff felt "acute, intense and severe

physical pain . . . for what appeared like five minutes."  *Id.*  Nevertheless,

Plaintiff acknowledged that the amount of time he was held on the ground

was "approximately two minutes."  *Id.* at 11.  Plaintiff said he was

frightened and thought he "was going to suffocate to death." *Id.* at 8.

While Plaintiff was being held face down on the floor, he said, "I can't breath[e]."  ECF No. 84-2 at 9.  Defendant Turner said, "this is only the beginning."  *Id.*  Another officer asked, "do you want us to lift him to his feet?"  *Id.*  Defendant Turner immediately said "no."  *Id.*

Eventually Defendant Turner released the pressure on Plaintiff's back and neck, he was lifted to his feet, and told to sit on the stool.  *Id.*  Plaintiff complied.  *Id.*  Plaintiff emphasized again that during the incident, he never resisted Defendant Turner or any other officer.  ECF No. 84-2 at 10.  He said he was compliant and only said "I can't breathe" while being held on the ground.  *Id.*

Defendant's version of this incident is somewhat different.  ECF No. 61.  Defendant's evidence shows that on May 9, 2019, at approximately 4:53 p.m., Defendant Turner escorted Plaintiff out of his cell and to a table, then ordered him to sit-down.  ECF No. 61-1 at 3.  According to the Defendant, Plaintiff said "I'm not sitting down."  *Id.* at 5.  Defendant then ordered Plaintiff to sit down a second time, and attempted to put Plaintiff in a seated position at the table.  *Id.*; *see also* ECF No. 61-6 at 2.  When Plaintiff began to pull away from him, the Defendant used force to gain Plaintiff's compliance.  ECF No. 61-1 at 5.  Defendant forced Plaintiff "to

the ground and onto his stomach." *Id.* at 3. Defendant said that Officers

Jones and Pitman "responded and offered their assistance by aiding

[Defendant Turner] in maintaining] control of the [Plaintiff] while he was on

the ground." *Id.* at 5. The Lieutenant also responded[4] and leg restraints

were placed on the Plaintiff. *Id.*

Officer Jones submitted a statement for the Use of Force Incident

Report saying he was conducting the search of Plaintiff's cell when the

incident occurred. ECF No. 61-1 at 6. Officer Jones heard Defendant

Turner say, "do not pull from me" and then a commotion outside the cell.

*Id.* Officer Jones responded and saw Defendant Turner "maintaining

control of the [Plaintiff] on the ground." *Id.* Officer Jones assisted in

"maintaining control of the inmate on the ground." *Id.* Officer Jones said

that "at no time did [he] use force during the incident." *Id.*

Officer Pittman's statement for the Use of Force Incident Report was

identical to the statement from Officer Jones, *see* ECF No. 61-1 at 7, and

from Officer Dale, *id.* at 8, and from Officer Brown. *Id.* at 9. All four officers

heard Defendant Turner tell Plaintiff, "do not pull from me."

---

[4] Defendant's declaration indicates that Plaintiff was held on the ground until the Lieutenant arrived, and then he was lifted to his feet. ECF No. 61-6 at 2.

Case No. 4:22cv467-WS-MAF

Defendant provided a copy of the "witness statement" form for Plaintiff. ECF No. 61-1 at 13. The form is dated May 9, 2019, and lists Plaintiff as the witness. *Id.* However, the form states that Plaintiff refused to sign the form and refused to provide a written statement. *Id.* Plaintiff disputes that and says "no FDC employee offered [him] the opportunity to provide a written or oral statement regarding Turner's 5-9-19 use of force; and [he] did not refuse to provide such a statement or refuse to sign" the witness statement form. ECF No. 84-2 at 10.

Additional evidence presented includes a hand-held video recording and a video recording from the fixed-wing camera in the housing unit.[5] The fixed-wing video of this encounter has both audio and video, although the audio is difficult to decipher. ECF No. 64 (Ex. B). The video shows the Defendant escorting Plaintiff from his cell to a table in the middle of the housing unit. As Defendant and Plaintiff reach the table, Defendant speaks to Plaintiff, but his words cannot be understood. Defendant is still holding Plaintiff's arm, and Plaintiff's arms are cuffed in the back. A moment later, Defendant steps toward the front of Plaintiff as though he was leading

---

[5] Defendant filed a motion to file the exhibits under seal, ECF No. 2, which was granted, ECF No. 63. The exhibits were separately filed from the summary judgment motion, ECF No. 61, as ECF No. 64.

Plaintiff to sit down on the bench behind him at the table.  Plaintiff can be seen moving his right foot to the right and leaning in that direction, away from the Defendant.  Immediately upon that movement, Defendant sweeps his leg, taking Plaintiff's legs out from under him.  Plaintiff goes to the ground, the Defendant rolls him onto his stomach, and then holds him there.  While doing so, the Defendant yells out and five officers rush to Defendant's assistance.  Four of those officers initially keep Plaintiff restrained on the ground, but the fourth officer who was at Plaintiff's feet stands up and releases his hold within a few seconds.  A short time later, a third officer gets up, leaving the Defendant and two other officers holding Plaintiff down.  Within two minutes, the officers lift Plaintiff to a standing position.  He is then moved to the bench where he sits at the table.

Lieutenant Gaines directed Officer Bednarek to "retrieve the video camera from central control and report to L-dormitory due to a reactionary use of force on" Plaintiff Akeem Muhammad.  ECF No. 61-1 at 10.  The hand-held recording (Ex. C) captures only the events after the use of force, and begins with Lieutenant Gaines giving an introduction, and the camera operator noting the date and time.  ECF No. 64, Ex. C.  The camera then comes into the housing unit and Plaintiff can be seen (from the back) sitting

at the table, held by two officers, while the nurse is conducting the post use-of-force examination.  The examination takes approximately three and a half minutes, at which time Plaintiff is escorted back into his cell.  *Id.*; *see also* ECF No. 61-1 at 5.  Several items thrown from Plaintiff's cell during the cell search remain on the floor, outside the cell.

A "Use of Force Incident Report" was completed and stated that no injuries were reported of either staff or the Plaintiff, and he was "placed back into his cell with no further incident."  *Id.*  Defendant also submitted the Emergency Room Record which notes that Plaintiff was ambulatory, alert, oriented, and was able to verbally respond to questions.  ECF No. 61-1 at 11.  The nurse noted Plaintiff had no injuries.  *Id.* at 11-12.

To the contrary, Plaintiff's affidavit says that during his assessment by the nurse, he "verbally informed the nurse that [he] had pain in [his] face, right ear, neck and right shoulder."  ECF No. 84-2 at 10.  Although difficult to hear, Plaintiff can be heard at the 1:20 mark of the hand-held video complaining about pain in his shoulder, his leg, and his face.  Ex. C.

Plaintiff was returned to his cell and "visually inspected [his] body" for injuries.  ECF No. 84-2 at 10.  Plaintiff saw abrasions and contusions on his right shoulder, on his face, below his right ear, and on his neck.  *Id.*  None

were present before the use of force.  *Id.*  He says he has suffered "significant" physical pain and "restricted mobility" in his right shoulder for three years.  *Id.* at 11.

On May 12, 2019, Plaintiff submitted a sick-call request complaining of an "abrasion and contusion on" his right shoulder, lingering pain in his right shoulder, pain under his right eye, in his right ear, and under his left ear.  ECF No. 61-5 at 3.  He said the problems began with a "use of force on 5-9-19."  *Id.*  A nurse examined Plaintiff and noted a 2cm x 2cm "scabbed abrasion" on his front right shoulder, but he had a full range of motion.  *Id.* at 5.  Plaintiff was prescribed acetaminophen for pain, but none was given to him "per [his] request."  *Id.* at 4.

Plaintiff filed a grievance on May 13, 2019, alleging "staff abuse" by Defendant Turner on May 9th because of an earlier grievance Plaintiff had filed against Dr. Boyce.  ECF No. 84-2 at 29.  The grievance response advised Plaintiff that his grievance was being "forwarded to the Inspector General's office for investigation."  *Id.*  The grievance was "approved for further investigation only."  *Id.*  As a result of Plaintiff's allegation, the video footage of the fixed wing camera was reviewed.  ECF No. 61-1 at 14.  The

conclusion was that the camera footage "did not support" Plaintiff's

allegations of excessive use of force.  *Id.*

Plaintiff was issued a disciplinary report by Defendant Turner for

"disobeying" an order.  ECF No. 61-2 at 1 (Defendant's Ex. D).  The

statement of facts reported that Plaintiff "was given several direct verbal

orders to sit at the wing 7 table while his cell was being searched."  *Id.* at 1.

Plaintiff refused to comply and when the Defendant attempted to put

Plaintiff in a seated position, "he began to pull away" and Defendant used

force to regain Plaintiff's compliance.  *Id.*  The disciplinary report notes that

Plaintiff declined staff assistance, refused to cooperate, and refused to

attend his DR hearing.  *Id.* at 1, 8-11.  Plaintiff was found guilty and lost

privileges for 30 days.  *Id.* at 1-2.  He did not lose gain time.  *Id.* at 2.

Plaintiff was transferred to Suwannee Correctional Institution in June

2019, and said that he was not asked at that time "about ongoing medical

problems," and he said he did not inform the nurse there of "any injuries,

pain or medical problems bothering" him.  ECF No. 84-2 at 10.  He said

that he did not volunteer information about ongoing, chronic health issues

because he knew "that nurses do not address non-urgent and non-

emergency medical issues during an intake medical assessment."  *Id.* at 12; *see also* ECF No. 61-5 at 7-8.

When Plaintiff was returned to ZCI in July 2019, he submitted sick call requests concerning ongoing pain in his back and right shoulder.  ECF No. 84-2 at 12-13.  The only medical treatment he was provided was pain medication, which Plaintiff said he did not want to take because he previously had been advised by his physician to "not take pain medicine continuously or long-term for [his] chronic pain."  *Id.* at 13-14.

In December 2019, Plaintiff was seen in the medical unit for his complaints of continued right shoulder pain.  ECF No. 61-5 at 9.  An X-Ray was ordered, but the results were "normal."  *Id.*  There was no sign of "shoulder separation, fracture, or dislocation."  *Id.* at 11.  Again, Plaintiff did not want pain medication.  *Id.* at 9.  Plaintiff has acknowledged that the pain in his "right shoulder finally went away in" approximately October 2022.  ECF No. 84-2 at 14.

Finally, Defendant presented the declaration of Shandel Boyce, the Psychological Services Director at ZCI.  ECF No. 61-7 at 1.  She states that Plaintiff's May 9, 2019, grievance complained of "being involuntarily housed in the mental health wing, and" he argued that he "should be

discharged." *Id.*  She also said that Plaintiff "made vague allegations that [she] knew of but failed to take action on officers treating inmates harshly in L-dormitory" and that she told Defendant Turner about Plaintiff's allegations. *Id.*  Dr. Boyce categorically denies Plaintiff's allegations and said she "never divulged the content of" Plaintiff's grievance to Defendant Turner, or to other correctional officers. *Id.*

**Analysis**

Plaintiff's complaint presented two claims against the Defendant for the use of unnecessary and excessive force.  ECF No. 49 at 7-8.  Plaintiff contends that the May 9th incident was actually two separate uses of force, the first force used was slamming Plaintiff to the ground, and the second force used was for using pressure to hold Plaintiff face-down on the ground. *Id.* at 4-5, 7-8; *see also* ECF No. 84-2 at 11.  As these events occurred as part of one episode lasting approximately two minutes, the events should be considered as one use of force.

The Eighth Amendment forbids cruel and unusual punishment. Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).  A claim that a prison official unnecessarily used excessive physical force on a prisoner falls within the Cruel and Unusual Punishments Clause.  The "core judicial

inquiry" for this claim uses the standard set forth in <u>Whitley v. Albers</u>, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992) (quoting <u>Whitley</u>, at 320-21, 106 S. Ct. at 1085); *see also* <u>Sconiers</u>, 946 F.3d at 1265.

Analysis of an excessive force claim considers "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" <u>Hudson</u>, 503 U.S. at 7; *see also* <u>Harris v. Chapman</u>, 97 F.3d 499, 505 (11th Cir. 1996).  Demonstrating an excessive use of force "requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'"  <u>Sconiers</u>, 946 F.3d at 1265 (quoting <u>Hudson</u>, 503 U.S. at 8).  To meet the subjective element, a prisoner must show that the excessive force was "sadistically and

maliciously applied for the very purpose of causing harm."  946 F.3d at

1265 (quoting <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321 (11th Cir. 2002));

*see also* <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1304 (11th Cir. 2010).  The

objective component "focuses on whether the official's actions were

'harmful enough,' <u>Hudson</u>, 503 U.S. at 8, 112 S. Ct. 995, or 'sufficiently

serious,' <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed.

2d 271 (1991), to violate the Constitution."  946 F.3d at 1265.

Analysis of excessive force claims must recognize that "not 'every

malevolent touch by a prison guard gives rise to a federal cause of action.'"

<u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d

995 (2010) (quoting <u>Hudson</u>, 503 U.S. at 9, 112 S. Ct. 995); *see also* 946

F.3d at 1265.

> The Eighth Amendment's prohibition of 'cruel and unusual'
> punishments necessarily excludes from constitutional
> recognition *de minimis* uses of physical force, provided that the
> use of force is not of a sort repugnant to the conscience of
> mankind."  *Id.* at 37-38, 130 S.Ct. 1175. Instead, the Eighth
> Amendment prohibits force that offends "contemporary
> standards of decency," regardless of whether "significant injury
> is evident," though the extent of injury may shed light on the
> amount of force applied or "whether the use of force could
> plausibly have been thought necessary."

Sconiers, 946 F.3d at 1265–66 (quoting Wilkins, 559 U.S. at 37, 130 S. Ct. 1175 (citation and internal quotation marks omitted)).  Although the "absence of serious injury" must be considered, it still remains true that "[t]he absence of serious injury does not necessarily preclude a claim under the Eighth Amendment . . . ."  Stallworth v. Tyson, 578 F. App'x 948, 953 (11th Cir. 2014).  The Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Wilkins, 559 U.S. at 37–38, 130 S. Ct. at 1178 (quoted in Stallworth, 578 F. App'x at 953).  Thus, the Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim."  Wilkins, 559 U.S. at 37, 130 S. Ct. at 1178.  The focus should not be on "whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  559 U.S. at 37, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 7, 112 S. Ct. at 999).

In this case, Plaintiff's affidavit seeks to present a genuine dispute of material fact as to whether there was a need for force.  Plaintiff maintained

that he was not refusing orders and suggested that inmates were given "options on a daily basis that inmates can choose to act on or not act on." ECF No. 84-2 at 3.  He contends that inmates are generally able to determine the difference between comments like "have a seat," which is optional, or "sit" which is an order.  *Id.*  If the inmate misunderstands, the officers customarily do and/or say things to the inmates to clearly inform them that their statement was an order."  ECF No. 84-2 at 4.

The problem for Plaintiff in this case is that the video evidence shows what happened and contradicts Plaintiff's testimony.  First, Plaintiff did not deny that he was unwilling to sit down.  Plaintiff acknowledged in his deposition that when the Defendant told him, "have a seat," Plaintiff "told him, 'no.'"

In addition, if Plaintiff misunderstood that Defendant Turner was giving him an offer to sit down instead of a direct order, the Defendant made his intent clear when he stepped in front of Plaintiff and attempted to physically guide Plaintiff to sit on the bench.  Contrary to Plaintiff's testimony in his affidavit, Defendant Turner did not release Plaintiff's arm; the Defendant was holding Plaintiff's left arm the entire time.

The video is also clear in showing that Plaintiff took a step to the right in an effort to pull away from the Defendant.  Defendant does not push Plaintiff.  Because Plaintiff's motion in the video is clear, it is undisputed that the Defendant used minimum force in a good-faith effort to maintain control and order.  It is true that Defendant's reaction to Plaintiff's motion was quick, but it was tempered.  Plaintiff was taken to the ground, but no unnecessary punches or kicks occurred; Plaintiff was turned over and simply held on the ground.  The incident was, without dispute, a disciplinary maneuver because Plaintiff refused to sit on the bench.  Moreover, the force used was minimal, did not cause serious injury, and could not be considered "repugnant to the conscience of mankind."  Therefore, summary judgment should be granted in favor of Defendant Turner.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Plaintiff's motion to strike,

ECF No. 89, be **DENIED**, that Defendant's motion for summary judgment,

ECF No. 61, be **GRANTED**, and judgment be entered in favor of the

Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on May 15, 2024.


S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**